## CLEVELAND-MCLEOD LUMBER COMPANY *v.* HOPSON.

### Opinion delivered December 12, 1910.

1. TIMBER—SALE OF—EVIDENCE.—In a suit for the price of timber delivered and accepted under contract, it was competent for the plaintiff to prove that certain windfallen timber was by agreement accepted in part performance of the contract. (Page 112.)

2. APPEAL AND ERROR—HARMLESS ERROR.—The introduction by plaintiff of evidence not strictly within the pleadings is not prejudicial if defendant did not claim a surprise but met the issue and introduced controverting evidence. (Page 112.)

3. COUNTERCLAIM—EVIDENCE.—Where, in a suit on a contract for timber cut and delivered, defendant set up by way of counterclaim that plaintiff had wrongfully cut timber from defendant's land, it was not error to refuse to permit defendant to prove the amount of timber cut from defendant's land without showing that such timber was cut by plaintiff. (Page 113.)

4. APPEAL AND ERROR—HARMLESS ERROR.—Where it was admitted that defendant agreed to accept windfallen timber, but there was a dispute as to the price which he was to pay for it, it was not prejudicial error to permit plaintiff to prove that defendant had agreed to accept windfallen timber from others, as such evidence tended to prove that the timber had some value, which fact was not denied. (Page 113.)

5. EVIDENCE—PRESUMPTION.—Where logs tendered by plaintiff under a contract were accepted and scaled by defendant without objection at the time, the presumption would be that they were of the quality required by the contract, and the burden would be on defendant to overcome this presumption by a fair preponderance of the evidence showing that there were defects in the logs which made them unmerchantable. (Page 114.)

6. TIMBER—SALE—DAMAGES.—Where a seller agreed to deliver merchantable timber, but delivered unmerchantable logs, and it was impracticable to ascertain at the time of delivery the extent of the damages, and the buyer offered to receive the logs and subsequently ascertain the amount of the damages, to which the seller made no objection, the buyer was entitled to deduct from the purchase price the amount of such damages. (Page 114.)

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; modified and affirmed.

*Otis T. Wingo,* for appellant.

*J. S. Lake,* for appellee.

McCULLOCH, C. J.   Plaintiff, W. C. Hopson, contracted in writing with the defendant, Cleveland-McLeod Lumber Com-

pany, to furnish saw timber to the latter at its mill "one million feet or more, up to one and one-half million feet, during the 15 months following August 1, 1907, in the following proportions: 50 per cent. pine, 25 per cent. oak and cypress and 25 per cent. gum." Further stipulations of the contract read as follows:

"The timber is to be put on our road, each kind of timber on skids or in piles to itself. This means that the oak, gum and pine are not to be mixed, the logs are all to be scaled merchantable, between the barks, with the usual methods; allowance for defective or crooked logs to be made in the scale. Price to be $7 for merchantable pine logs; $8 for No. 1 oak and cypress; $6 for No. 2 oak and cypress logs, and $6 for merchantable gum."

Plaintiff delivered a considerable quantity of the timber specified in the contract up to July 1, 1908, which was fully paid for, and there is no controversy as to that. He delivered further quantities of timber after the above-named date, which he claims have not been paid for in full, and he instituted this action against defendant to recover the amount of balance alleged to be due on account of timber delivered, and also to recover damages alleged to have been sustained by reason of a breach of the contract by defendant in refusing to permit plaintiff to furnish the full quantity of timber called for in the contract. During the progress of the trial it developed from plaintiff's own testimony that he had expressly agreed to release defendant from its obligation to accept any more timber, and the cause of action on account of timber not accepted was abandoned, thus eliminating that feature of the case.

In the other paragraphs of the complaint, plaintiff claimed $107.52 balance for timber furnished under oral contract, and $508.01 balance for timber furnished under the written contract. Defendant filed an answer and counterclaim, denying all the allegations of the complaint as to balances due, and alleging that plaintiff had wrongfully taken timber belonging to defendant of the value of $1,200 and delivered it under the contract. The jury returned a verdict in favor of plaintiff for $609.48. Judgment was rendered for that amount, and defendant appealed.

The jury in arriving at the verdict accepted the precise figures given by plaintiff in his testimony as to the amount due.   The items are as follows:

Pine timber at $7 per M in excess of quantity credited, $ 92.30

Difference in scale of hickory timber . . . . . . . . . . . . . . . .   13.90

Difference in scale of pine at $3 per M hauled under

    oral contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   93.62

Difference in scale of oak . . . . . . . . . . . . . . . . . . . . . . . .   9.64

Items wrongfully charged against plaintiff on defend-

    ant's books for damaged timber furnished . . . . . . . .  400.00

$609.52

The principal controversy was as to the item of $400 for damaged timber.   This was on a lot of timber which had been blown down in a cyclone, but which defendant agreed to accept. It was credited to plaintiff on defendant's books at the contract price of $7 per thousand feet according to the log scale made by defendant's employees, and subsequently defendant charged back against plaintiff said sum of $400 as estimated damages to the timber, claiming the right to do this under express agreement with plaintiff.

Plaintiff testified that he and defendant's representative, G. W. Cleveland, made an agreement that, in consideration of his releasing defendant from any obligation to take any more timber, he (plaintiff) could deliver the cyclone timber to the defendant under the contract at the price of $7 per thousand feet stipulated in the contract.   Cleveland testified that he agreed to accept the cyclone timber and credit the price to plaintiff, but that the damage to the timber should be estimated after it was sawed, and the amount of damages deducted from the contract price.   Here is his statement on that subject:   "A. Yes, sir; I told him to go ahead and deliver the timber all right, but I said that we would get at the damage to the timber after it was sawed.   That is what I said.   Q.   You say that in this conversation it was agreed between you and Mr. Hopson that an estimate of the damages to the logs should be kept by you as the logs were being sawed up and made into lumber?   A. Yes, sir; that is the way I understood the wind-up of our conversation; that I was to keep a record of the damage and settle on that basis."

He stated further that, after the damaged timber had been sawed, he made a settlement with plaintiff as to the amount, in which they agreed on an estimate of 200,000 feet of timber damaged to the extent of $2 per thousand feet, making a total of $400, and that in the presence of plaintiff, and without any objection from the latter, he instructed his bookkeeper to charge plaintiff back with the item of damage. Each party denied the statements of the other, thus making a sharp conflict in the testimony. They both agreed, however, that the damaged timber was to be delivered and accepted. The jury settled the conflict in favor of plaintiff's version of the agreement.

The first assignment of error argued here is that the plaintiff was permitted to testify as to an oral agreement concerning the cyclone timber, thus shifting his position, as it is claimed, and introducing into the trial an issue not raised by the pleadings. We do not think this testimony introduced a new issue not raised by the pleadings. Plaintiff sued for the price of timber delivered and accepted under the contract, and it was within the issues thus presented for him to testify that the cyclone timber was accepted by agreement in part performance of the contract. Both parties testified, as has already been shown, that this timber was to be delivered and accepted under the contract, the only point of difference being as to whether or not deduction should be made for any damage found. But, even if this was not strictly within the pleadings, there was no prejudice · in allowing it to be introduced, for defendant did not claim any surprise, nor ask for further time to procure further testimony on that issue. It met the issue squarely, and introduced testimony contesting the plaintiff's claim. We think no prejudicial error was committed on this branch of the case.

The next assignment is that the court erred in refusing to allow the defendant to introduce testimony as to the condition of the account between the parties prior to July 1, 1908. We find on examination of the record that this assignment is not sustained, for the court did permit defendant to introduce the whole account from the date of the contract down to the commencement of the suit, and to testify concerning the items thereof. This was, however, entirely unnecessary, for the plaintiff made no claim for anything due prior to July 1, 1908. He stated in

his testimony that he was paid in full for all timber delivered up to that time, and that there was no difference between the parties on that date.

Another assignment is that the court erred in refusing to permit the defendant, in support of its counterclaim, to show by witness Neal the amount of timber cut on defendant's land during the year 1908. Plaintiff admitted on the witness stand that he cut three or four trees on one of two quarter sections of defendant's lands, and reported same to defendant, and that Mr. Cleveland told him that the quantity was so small that it did not amount to anything, and that he could go ahead and haul in the timber. Defendant then offered to prove by witness Neal the quantity of pine timber cut on the two quarter sections of land during the year 1908. The court refused to allow this proof to be introduced until testimony had been introduced showing that plaintiff Hopson had cut the timber. The testimony of this witness did not reach to the question that plaintiff had cut the timber, and no other proof was introduced or offered on that point. Plaintiff admitted that some of his men had crossed the line and cut three or four of the trees, but this did not justify charging him with all timber taken from the land during the year 1908, without some further proof as to the amount his men had cut. He was bound no further than the extent of his admission unless further proof was introduced as to the amount of timber he had cut. *Stoneman-Zearing Lumber Co.* v. *McComb,* 92 Ark. 297.

The next ground urged for reversal is that the court erred in permitting the plaintiff to testify that the defendant had accepted logs from the cyclone belt from other parties. Mr. Cleveland testified in the case, as has already been stated, that he agreed with plaintiff to accept the cyclone timber, but that the amount of damages should be afterwards ascertained and deducted. He denied that he had agreed to take it at the contract price, however, without deduction for damages. On cross examination he was asked if he had not accepted cyclone timber from other parties in that locality, and he replied that he had accepted a few thousand feet from another man who owed defendant on account. Plaintiff was subsequently called back to the witness stand, and was allowed to make the following state-

ment over defendant's objection: "Q. Within your knowledge, did the Cleveland-McLeod Lumber Company take other timber a long time after this was delivered out of that same belt? A. Yes, sir; they cut a lot of it. I do not know who took up the timber and hauled it in, but it was cut."

Now, the only tendency of this testimony was to show that defendant had accepted from others some of the same kind of timber from the cyclone belt, as being of some value. We can not see how it had any real bearing on the questions in issue, or that it could have had any effect upon the jury in reaching a verdict. There was no controversy between the parties as to defendant agreeing to accept this timber, or that it was of some value. In fact, the defendant only demanded a deduction of $2 per thousand feet on account of the damaged condition of the timber, thus allowing the plaintiff to stand credited with the timber at $5 per thousand. So we can not see that any prejudice could possibly have resulted to defendant from allowing the plaintiff to make the statement.

An instruction given by the court is complained of which in substance stated that where logs were accepted and scaled by defendant without objection at the time, the presumption would be that they were of the quality required by the contract, and the burden would be on the defendant to overcome the presumption by a fair preponderance of the evidence showing that there were defects in the logs which made them un-merchantable. We think this instruction was correct, for, after the logs were accepted and scaled by the defendant without objection at the time, then the subsequent discovery of defects would be a matter within the peculiar knowledge of defendant which devolved on it to show.

The court gave the following instruction asked by defendant, with a very slight and unimportant modification, which we think fully and correctly presented the defendant's side of the case:

"1. The jury are instructed that if you find that the logs delivered by plaintiff included worm-eaten to such an extent as to render them unmerchantable logs, not up to the requirement of the written contract, and you should further find that it was not practicable to ascertain at the time said logs were

delivered and scaled the extent of the damage to said logs by reason of being so worm-eaten, and you further find that no allowance for said worm-eaten condition was made in the scaling of said logs, and you further find that defendant advised the plaintiff that it would receive said logs and afterwards ascertain and charge to plaintiff the amount of such damages, and to this plaintiff offered no objection, then defendant was and is entitled to deduct from the contract price of said logs such an amount as you may find from the evidence will reasonably cover the damages to said logs by reason of their unmerchantable condition."

Another instruction, given at the request of plaintiff, was objected to by defendant, and is now assigned as error. We do not deem it of sufficient importance to set forth, but we have considered it, and think that it was a correct interpretation of the contract as to the kind of logs which were to be delivered under the contract.

It appears from the statements put in evidence by plaintiff that there was an error in addition which makes a difference of 10,000 feet in the quantity of logs delivered. He claims to have delivered 352,352 feet, and exhibits the scale receipts which foot up only 314,040 feet. Adding to these two scale receipts which had been lost, it still leaves plaintiff's claim short to the extent of 10,000 feet. Learned counsel for plaintiff do not attempt in their brief to explain this deficiency. It is merely stated, in reply to defendant's attack on the sufficiency of the testimony in support of the verdict, that the plaintiff testified at the trial that he delivered 352,352 feet. He did so testify, but the written scale receipts which he introduced show clearly that he was mistaken. We conclude, therefore, that the verdict was excessive to the extent of 10,000 feet of logs, at $7 per thousand, making $70.

The judgment will therefore be modified by deducting $70, and with this modification the judgment is affirmed.

KIRBY, J., dissenting.